UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION -- AT LEXINGTON

| | |
|---|---|
| GGNSC Stanford, LLC d/b/a Golden Living Center -- Stanford, et al.<br><br>    Plaintiffs,<br><br>v.<br><br>CHARLES JOHNSON,<br><br>    Defendant. | CIVIL ACTION NO. 5:16-cv-00012-KKC<br><br><br>**OPINION AND ORDER** |

This matter is before the Court on the plaintiffs' motion to compel arbitration (DE 4) and the Defendant's motion to dismiss (DE 6). For the following reasons, the motion to dismiss will be denied and the motion to compel arbitration will be granted.

**I. Background**

For about three months in 2015, defendant Charles Johnson was a resident of Golden Living Center – Stanford, a nursing facility in Stanford, Kentucky. He alleges that he contracted MRSA while at the facility and suffered other injuries. He filed an action in state court against nine related corporate entities that he alleged owned and operated the facility and against the administrator of the facility, alleging that all of these defendants were negligent and violated his rights under certain state statutes. He also named five unknown defendants but did not make any specific allegations against them or assert any claims against them.

The nine corporate entities then filed a claim in this Court asking for an order compelling Johnson to arbitrate the claims filed in state court and for an order enjoining him from pursuing the state-court action. Johnson moves to dismiss the complaint.

**II. Motion to Dismiss (DE 6)**

## A. Jurisdictional Issues

Johnson questions this Court's jurisdiction on several grounds. He first argues that this Court does not have subject-matter jurisdiction. In their complaint in this Court, the corporate plaintiffs asserted that this Court has diversity jurisdiction under 28 U.S.C. § 1332 because they are not Kentucky citizens and Johnson is and because the amount in controversy exceeds $75,000.

Johnson acknowledges that complete diversity exists among the named parties in this action. He asserts, however, that the question is not whether diversity jurisdiction exists in the action filed in this Court. Instead, he argues that the Court should consider whether diversity jurisdiction exists in the underlying state-court action. The issue, he argues, is whether this Court can "step into the shoes of the State trial court, in resolving the underlying dispute." (DE 6-1, Mem. at 17.) In support of this argument, he cites *Vaden v. Discover Bank*, 556 U.S. 49 (2009).

With *Vaden*, the Supreme Court sought to resolve a circuit split regarding how district courts should determine whether there is *federal-question* jurisdiction under 28 U.S.C. § 1331 over a federal action like this that seeks to compel arbitration of claims made in a state-court action. Prior to *Vaden*, some circuits held that the district courts should look only to the federal court complaint – not the state-court complaint – to determine if it raised a federal question. *Northport Health Servs. of Arkansas, LLC v. Rutherford*, 605 F.3d 483, 487 (8th Cir. 2010) (citing *Westmoreland Capital Corp. v. Findlay*, 100 F.3d 263, 268 (2d Cir.1996)). Other circuits held that a district court should "'look through' the § 4 arbitration petition at the underlying dispute in order to determine whether there was a federal question." *Id.* at 487 (quoting *Cmty. State Bank v. Strong*, 485 F.3d 597, 606 (11th Cir.2007) and citing *Discover Bank v. Vaden*, 396 F.3d 366, 368–70 (4th Cir.2005)).

In *Vaden*, the Supreme Court adopted the "look-through" approach to federal question jurisdiction, finding that, in determining whether *federal-question jurisdiction* exists in an action

2

to compel arbitration and enjoin a state-court action, a federal court should determine its jurisdiction by looking to the state-court complaint. *Vaden*, 556 U.S. at 62. Johnson argues that, in determining whether *diversity jurisdiction* exists, this Court should also look to the state-court complaint.

The Sixth Circuit has not yet addressed this issue. In *Northport*, however, the Eighth Circuit rejected the argument, finding that in *Vaden*, the Supreme Court "carefully limited its statement of the issues and holding to federal question jurisdiction." *Northport*, 605 F.3d at 490. Thus, the Eighth Circuit concluded that "diversity of citizenship is determined in these cases by the citizenship of the parties named in the proceedings before the district court, plus any indispensable parties who must be joined pursuant to Rule 19." *Id*. at 491. This Court continues to find the Eighth Circuit's opinion persuasive. *See Brookdale Senior Living Inc. v. Stacy*, 27 F. Supp. 3d 776 (E.D. Ky. 2014). Accordingly, in determining whether diversity jurisdiction exists in this case, the Court will look to the parties named in the complaint and any indispensable parties under Rule 19.

That leads to Johnson's next argument: that this matter should be dismissed because the facility administrator is an indispensable party and must be joined in this action as a plaintiff under Federal Rule of Civil Procedure 19(b). There is no dispute that the administrator is a Kentucky citizen and, thus, his joinder would destroy this Court's diversity jurisdiction.

"Rule 19 of the Federal Rules of Civil Procedure establishes a three-step analysis for determining whether a case should proceed in the absence of a particular party." *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 200 (6th Cir. 2001). The first step is to determine whether a party not joined is necessary under Rule 19(a). *Id*. Second, if the party is necessary, the court must next determine whether joinder is feasible, considering whether the party is subject to personal jurisdiction and if joinder will destroy the court's subject-matter jurisdiction. *Id*. Third, if joinder

3

will destroy subject-matter jurisdiction—for instance, through joinder of a non-diverse party—the court must examine "whether in equity and good conscience the action should proceed" without the nonjoined party, i.e., whether the party is "indispensable." *Id*. If an indispensable party cannot be feasibly joined, the action must be dismissed. However, if the party is not indispensable, the action may proceed in that party's absence. *See GGNSC Vanceburg, LLC, v. Hanley*, Civil Action No. 13–106–HRW, 2014 WL 1333204, at *3 (E.D.Ky. Mar.28, 2014).

For purposes of this opinion, the Court will assume that the administrator is a necessary party. Turning to step two – feasibility of joinder – joining him in this action will destroy this Court's diversity jurisdiction. Thus, this Court must determine whether he is indispensable, meaning that the action should be dismissed rather than proceed without him. Rule 19(b) provides four factors to consider when determining whether a non-joined party is indispensable:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
>    (A) protective provisions in the judgment;
>    (B) shaping the relief; or
>    (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

Johnson argues that the administrator is indispensable in this action to enforce the arbitration agreement because the claims against him in the underlying state-court action are also potentially covered under the agreement. He argues "[b]ecause the non-corporate entities are beneficiaries of the exact same ADR Agreement as Plaintiffs, and because the actions of Plaintiffs

4

and non-corporate entities are intertwined in Defendant's claims in the underlying controversy, the non-corporate entities are an indispensable party in this case." (DE 6-1, Mem. at 22.)[1]

In support of this argument, Johnson cites *Cytec Indus., Inc. v. Powell*, 630 F. Supp. 2d 680 (N.D.W. Va. 2009), a West Virginia district court decision in which an employee sued both his corporate employer and his individual supervisor in state court for firing him, alleging that the termination violated several West Virginia statutes. Similar to the plaintiffs' actions in this case, the corporate employer sued the employee in federal court seeking an order compelling him to arbitrate his state-court claims against the corporation. Like Johnson, the employee argued that the federal court action should be dismissed because the individual supervisor was an indispensable party whose joinder would destroy diversity.

The district court agreed because, a "'high potential for legal whipsawing' exists if [the employee] is forced to pursue his claims against [the individual supervisor] in state court, while those same claims against [the corporate employer] potentially become subject to arbitration. Moreover, if [the individual supervisor] continues to assert the arbitration agreement as an affirmative defense in state court, both she and [the corporate employer] conceivably could obtain conflicting decisions regarding that agreement's legality." *Id*. at 686.

The Sixth Circuit, however, has expressly rejected the argument that duplicative litigation and potentially inconsistent legal conclusions over an arbitration agreement are grounds for finding a party indispensable. In *PaineWebber, Inc. v. Cohen*, 276 F.3d 197 (6th Cir. 2001), the plaintiff sought to compel the heirs of its former employee to submit their state-law tort claims to arbitration. Like the instant case, PaineWebber sought an injunction in federal court. And, as here, the defendant objected to the federal suit on the grounds that a non-diverse employee sued in

---

[1] When referring to the "non-corporate entities," in addition to the facility administrator, Johnson may be referring to the five defendants he named in the state-court complaint and referred to only as unknown defendants John Does 1 through 5. The findings in this opinion are equally applicable to the unknown defendants.

the underlying state action was indispensable because of "the potentially inconsistent legal obligations that might result from conflicting interpretations of the arbitration clauses by state and federal courts." *Id.* at 202.

The Sixth Circuit rejected the defendant's argument, pointing out that "the possibility of having to proceed simultaneously in both state and federal court is a direct result of [the defendant's] decision to file suit naming [the plaintiff] and [the nonjoined party] in state court rather than to demand arbitration under the [parties'] Agreement." *Id.* at 202. Further, "[e]ven if the parallel proceedings were not the result of [the defendant's] pending state court action, the possibility of piecemeal litigation is a necessary and inevitable consequence of the FAA's policy that strongly favors arbitration." *Id.* at 203. As to the argument that this Court and the state court may reach conflicting conclusions about the arbitration agreement, the Sixth Circuit determined that possibility "does not present the degree of prejudice necessary to support a conclusion that [the nonjoined party] is an indispensable party." *Id.*

This Circuit's precedent is clear; the possibility of inconsistent rulings coupled with the burden on the defendant in pursuing duplicative litigation is not sufficiently prejudicial to find a party indispensable. As the plaintiffs note in their response brief, in accordance with that precedent, Kentucky federal district courts have consistently rejected the arguments that Johnson advances here. *See, e.g., GGNSC Frankfort, LLC v. Tracy*, No. CIV. 14-30-GFVT, 2015 WL 1481149, at *7 (E.D. Ky. Mar. 31, 2015); *Golden Gate Nat. Senior Care, LLC v. Addington*, No. 14-CV-327-JMH, 2015 WL 1526135, at *5 (E.D. Ky. Apr. 3, 2015); *Richmond Health Facilities-Kenwood, LP v. Nichols*, No. CIV.A. 5:14-141-DCR, 2014 WL 4063823, at *6 (E.D. Ky. Aug. 13, 2014). In accordance with the clear Sixth Circuit guidance and voluminous case law, the Court finds that none of the individual defendants in the state-court action are indispensable under Rule 19(b).

Johnson argues that, even if this Court does have jurisdiction over this action, it should abstain from exercising it under the *Colorado River* doctrine. "In certain 'exceptional' circumstances, [ ] a federal district court may abstain from exercising its subject matter jurisdiction due to the existence of a concurrent state court proceeding, based on 'considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *PaineWebber*, 276 F.3d at 206 (quoting *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976)). But "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule," and this "extraordinary and narrow exception" is only justified when it "would clearly serve an important countervailing interest." *Colorado River*, 424 U.S. at 813.

The first issue is whether there is, in fact, a parallel state court proceeding. While for purposes of *Colorado River* abstention, the state and federal proceedings need only be "substantially similar," *Romine v. Compuserve Corp.*, 160 F.3d 337, 340 (6th Cir. 1998), the two actions cannot be said to be parallel if the claims presented in this Court are not presented in the state court action at all. Johnson argues that the state-court and federal actions are parallel because the parties are almost identical and both require the court to determine whether the arbitration agreement is valid and, if so, whether the agreement requires that Johnson's state-court claims be arbitrated. The corporate plaintiffs in this action, however, point out that they have not asked the state court to determine these issues. Nor has Johnson. Nothing in the record before this Court indicates that any of the parties to this action have requested the state court to make any determinations regarding the arbitration agreement or the arbitrability of Johnson's state-law claims. Accordingly, the Court cannot find that this action and the state-court action are parallel.

Furthermore, even if the state court had been asked to determine the validity of the arbitration agreement and whether Johnson's claims should be arbitrated, the Court could not find abstention

7

warranted. "[T]he decision to dismiss a federal action because of a parallel state-court action rests 'on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction.'" *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 886 (6th Cir.2002) (quoting M*oses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 16 (1983)).

Courts consider roughly eight factors when determining whether abstention under *Colorado River* is necessary. *PaineWebber*, 276 F.3d at 206 (citing *Romine*, 160 F.3d at 340–41. These factors are::

> (1) whether the state court has assumed jurisdiction over any res or property;
> (2) whether the federal forum is less convenient to the parties;
> (3) avoidance of piecemeal litigation; . . .
> (4) the order in which jurisdiction was obtained[;] . . .
> (5) whether the source of governing law is state or federal;
> (6) the adequacy of the state court action to protect the federal plaintiff's rights;
> (7) the relative progress of the state and federal proceedings; and
> (8) the presence or absence of concurrent jurisdiction.

*Id*. (citing *Romine*, 160 F.3d at 340–41).

The first two factors favor this Court exercising jurisdiction in this action. There is no res and no party has argued that either forum is more convenient. *See PaineWebber*, 276 F.3d at 207. As to the fourth and seventh factors, they again favor the exercise of federal jurisdiction. The state court action was filed before this but there is no evidence in this record that it has substantially advanced or that the state court has addressed the arbitration issue at all. "[T]he relative progress of the proceedings is at least as important as the order of filing." *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 887 (6th Cir. 2002).

The "most important" factor is the third factor, which asks "whether there is a 'clear federal policy evinc[ing]. . . the avoidance of piecemeal adjudication' found within the statutory scheme at

8

issue." *Answers in Genesis of Kentucky, Inc. v. Creation Ministries Int'l., Ltd.*, 556 F.3d 459, 467 (6th Cir.2009). The Sixth Circuit Court of Appeals has held that "[i]n the case of the Federal Arbitration Act, there most clearly is not such a policy." *Id.* at 467. This is because the FAA "requires district courts to compel arbitration . . . when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." *Id.* at 467–68. Thus, the most important factor when determining whether to exercise this Court's jurisdiction weighs in favor of doing so.

The fifth and eight factors weigh also weight in favor of exercising jurisdiction. This Court has jurisdiction over the issue presented in the complaint and the "FAA provides the source of law for interpreting the arbitration clause [.]" *PaineWebber*, 276 F.3d at 208. While the Court recognizes that the state court is an adequate venue to resolve the question of whether Johnson's state-court claims must be arbitrated, considering all of these factors, the Court will not abstain from exercising its jurisdiction over this action.

### B. Enforceability of the Arbitration Agreement

Johnson next moves to dismiss the complaint in this action under Federal Rule of Civil Procedure 12(b)(6). The corporate plaintiffs bring this action under the FAA which provides in relevant part that "a written provision in any . . .contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract. . . shall be valid, irrevocable, and enforceable. . . ." 9 U.S.C. § 2. The statute further defines "commerce" to include "commerce among the several States." 9 U.S.C. § 1. The phrase "involving commerce" has been interpreted as "the functional equivalent of the more familiar term 'affecting commerce' – words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U .S. 52, 56 (2003) (citation omitted).

9

Johnson argues that the plaintiffs' action must be dismissed because the arbitration agreement here does not evidence a transaction involve interstate commerce and thus, it is not subject to the FAA at all. He argues that the agreement is between a Kentucky facility and a Kentucky citizen about services provided in Kentucky. Nevertheless, federal courts in this district have consistently determined that agreements to arbitrate disputes involving the provision of long-term health care evidence a transaction involving interstate commerce. *See e.g., GGNSC Frankfort, LLC*, 2015 WL 1481149, at *11 (stating "a nursing home's acceptance of Medicare or Medicaid has consistently been found sufficient to establish an arbitration agreement's ties to interstate commerce"); *Richmond Health Facilities – Kenwood, L.P.*, 2014 WL 4063823 at * 8; *Golden Gate National Senior Care, LLC*, 2015 WL 1526135 at 8. ("Interstate commerce is interpreted broadly and healthcare is an economic activity that represents a general practice subject to federal control."); *GGNSC Louisville Hillcreek, LLC v. Warner*, No. 3:13-CV-752-H, 2013 WL 6796421, at *8 (W.D. Ky. Dec. 19, 2013) ("The food, medicine, and durable medical supplies that Hillcreek provided must come from somewhere . . . the Court takes judicial notice that it is impracticable for Hillcreek to procure all goods necessary for the daily operation purely through intrastate channels.")

Because the arbitration agreement evidences a transaction involving interstate commerce – the provision of healthcare – it is governed by the FAA.

Finally, Johnson argues that the complaint must be dismissed because the arbitration agreement is unconscionable. The doctrine of unconscionability is a narrow exception to the general rule that "absent fraud in the inducement, a written agreement duly executed by the party to be held, who had an opportunity to read it, will be enforced according to its terms." *Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335, 341 (Ky.Ct.App.2001). An unconscionable contract is "one which no man in his senses, not under delusion, would make, on the one hand, and which no

fair and honest man would accept, on the other." *Id*. at 342 (quoting *Louisville Bear Safety Serv., Inc. v. S. Cent. Bell Tel. Co.*, 571 S.W.2d 438, 439 (Ky. Ct. App. 1978).

There are two forms of unconscionability. Procedural unconscionability "pertains to the process by which an agreement is reached." *Id*. at 341, n. 22. Such complaints might relate to the size of the print, unclear language, and concerns raised regarding contracts of adhesion. *Id*. "Substantive unconscionability 'refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent.'" *Id*. (citing *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir.1999)).

Johnson argues that the arbitration agreement here is both procedurally and substantively unconscionable. As to procedural issues, he argues the agreement is unconscionable because it is "part of a mass-produced, boiler-plate, pre-printed document, likely presented" to Johnson with a "lengthy stack of admissions paperwork" and because there is a "gross disparity of bargaining power" between the two parties, one being a sophisticated healthcare services conglomerate and the other a family or resident "facing the emotional and difficult task of seeking necessary care for a loved-one from an unknown third party."

In *Conseco*, the Kentucky Court of Appeals determined that an arbitration provision within an agreement was procedurally sound because "[t]he clause was not concealed or disguised within the form; its provisions are clearly stated such that purchasers of ordinary experience and education are likely to be able to understand it, at least in its general import; and its effect is not such as to alter the principal bargain in an extreme or surprising way." 47 S.W.3d at 343. Further, the individuals objecting to the enforceability of the agreement did not deny that they were able to read it. *Id.*

Here, the agreement to arbitrate is not contained in a clause buried within a long document. It is contained in a separate document titled in bold with and all capital letters, "ALTERNATIVE

11

DISPUTE RESOLUTION AGREEMENT." The agreement instructs in bold just beneath the title, "THIS AGREEMENT IS <u>NOT</u> A CONDITION OF ADMISSION TO OR CONTINUED RESIDENCE IN THE FACILITY." The agreement further states in bold:

> THE PARTIES UNDERSTAND, ACKNOWLEDGE, AND AGREE THAT THEY ARE SELECTING A METHOD OF RESOLVING DISPUTES WITHOUT RESORTING TO LAWSUITS OR THE COURTS, AND THAT BY ENTERING INTO THIS AGREEMENT, THEY ARE GIVING UP THEIR CONSTITUTIONAL RIGHT TO HAVE THEIR DISPUTES DECIDED IN A COURT OF LAW BY A JUDGE OR JURY, THE OPPORTUNITY TO PRESENT THEIR CLAIMS AS A CLASS ACTION AND/OR TO APPEAL ANY DECISION OR AWARD OF DAMAGES RESULTING FROM THE ADR PROCESS EXCEPT AS PROVIDED HEREIN.

The language of the agreement is clear and purchasers of ordinary experience and education should understand its general import. Johnson does not assert that he was unable to read it. Further, the agreement advises the resident that he has the right to seek legal advice regarding the agreement and that he can revoke the agreement by sending notice to the facility within 30 days of signing it. Accordingly, this Court has no grounds to find the arbitration agreement procedurally unconscionable.

As to the substance of the agreement, Johnson argues generally that "the fees for arbitration are substantially higher" than those for an action in state court and that they are not disclosed in the agreement. He also argues that the agreement truncates discovery. As to fees for arbitration, the agreement provides:

> Where Resident initiates arbitration against Facility, the *only fee* required to be paid by Resident is $250, which is approximately equivalent to a court filing fee; *all other fees and costs*. . . shall be paid by Facility. Where Facility initiates arbitration, Facility will pay all fees and costs associated with the arbitration other than Resident's attorney fees, if any.

The Court cannot find this provision "one which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other." *Conseco*, 47 S.W.3d at 342.

The agreement does provide that, within 10 days from the commencement of the arbitration, the parties must submit the dispute to the Judicial Arbitration Mediation Service (JAMS) for mediation and must share equally in its costs. It does not indicate what those costs may be. However, "that fact alone is plainly insufficient to render [the agreement] unenforceable." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000). "[W]here, as here, a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Id.* at 92. Johnson does not discuss the mediation provision, the costs of mediation, or his ability to pay his share of the mediation costs. Accordingly, "the 'risk' that [Johnson] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement." *Id.* at 91.

As to discovery limits, Johnson does not discuss any particular limitations. Further, even if the discovery permitted under arbitration is not "as extensive as in the federal courts, by agreeing to arbitrate, a party trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (U.S. 1991) (internal quotations and citation omitted).

Accordingly, this Court has no grounds to find the arbitration agreement substantively unconscionable.

For all these reasons, the motion to dismiss will be denied.

### III.    Motion to Compel Arbitration (DE 4)

As to the plaintiffs' motion to compel arbitration, Johnson has not filed a response but has instead relied on his motion to dismiss. The arbitration agreement provides that it broadly applies to:

> any and all disputes arising out of or in any way relating to this Agreement or the Resident's stay at the Facility or the Admissions Agreement between the Parties that would constitute a legally cognizable cause of action in a court of law sitting in the state where Facility is located. Covered disputes include but are not limited to all claims in law or equity arising from . . . a violation of a right claimed to exist under federal, state, or local law or contractual agreement between the Parties; tort; breach of contract; consumer protection; fraud; misrepresentation; negligence; gross negligence; malpractice; and any alleged departure from any applicable federal, state, or local medical, health care, consumer, or safety standards.

With his state-court complaint, Johnson asserts claims for negligence and for violation of certain state statutory rights. The arbitration clause applies to these claims.

The agreement provides that it applies to Golden Living Center –Stanford and its employees, agents, officers, directors, affiliates, and any parent or subsidiary. There is no dispute that this encompasses all of the plaintiffs in this action.

Accordingly, the motion to compel arbitration and enjoin the state court proceedings will be granted.

### IV. Conclusion

For all these reasons, the Court hereby ORDERS as follows:

1) the defendant's motion to dismiss (DE 6) is DENIED;

2) the plaintiffs' motion to compel arbitration and to enjoin the state-court action (DE 4) is GRANTED;

3) Charles Johnson SHALL resolve all of his claims against the plaintiffs via the mechanisms outlined in the Alternative Dispute Resolution Agreement;

4) Charles Johnson is ENJOINED from pursuing his pending state-court action against the plaintiffs in the Lincoln Circuit Court; and

14

5) this matter is STRICKEN from the Court's active docket.

Dated September 2, 2016.

*Karen K. Caldwell*
KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY